THE ESTATE OF WYNN v. TULSA COUNTY TREASURER



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:THE ESTATE OF WYNN v. TULSA COUNTY TREASURER

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 THE ESTATE OF WYNN v. TULSA COUNTY TREASURER
2019 OK CIV APP 60
Case Number: 116481
Decided: 12/21/2018
Mandate Issued: 10/30/2019
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2019 OK CIV APP 60, __ P.3d __

 

THE ESTATE OF MAY GREGORY WYNN, MELISSA WYNN, an individual, and GREGORY WYNN, an individual, Plaintiffs/Appellants,
v.
TULSA COUNTY TREASURER, J. DENNIS SEMLER, in his official capacity, Defendant/Appellee,
and
CHARLES PATTERSON and TRACIE PATTERSON, Intervening Defendants/Counter-Claimants/Third-Party Plaintiffs/Appellees,
v.
THE ESTATE OF GLYNN EHRHARDT WYNN, Third-Party Defendant.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE MARY FITZGERALD, JUDGE

AFFIRMED

James C. Thomas, William D. Thomas, Tulsa, Oklahoma, for Appellants,

Kim M. Hall, Tulsa, Oklahoma, for Appellee,

Thomas M. Askew, Sharon K. Weaver, Tulsa, Oklahoma, for Third-Party Plaintiffs/Appellees.

Larry Joplin, Judge:

¶1 The Plaintiffs/Appellants, The Estate of May G. Wynn, Melissa Wynn, and Gregory Wynn, seek review of the August 1, 2017 summary judgment order granting the summary judgment motion of the Tulsa County Treasurer, as well as the grant of partial summary judgment in favor of Charles and Tracie Patterson and the denial of Appellants' motion for summary judgment.

¶2 This case arises from the tax sale of property in Tulsa County, once owned by Glynn and May Wynn.[1] The property was sold at the Tulsa County Treasurer's tax resale auction on June 13, 2016 for delinquent and unpaid 2012 taxes, pursuant to 68 O.S. Supp.2008 §3105 and §3125.[2] Glynn and May Wynn owned the property in joint tenancy with right of survivorship. Glynn Wynn passed away in 2013, after which time the property belonged to May Wynn as a result of the joint tenancy ownership. Their daughter, Melissa Wynn, was named personal representative of Glynn Wynn's estate. Gregory Wynn is the son of Glynn and May Wynn.

¶3 There were two tax sale notifications, listed as "Early Notification of 2016 Tax Resale Auction" dated July 9, 2015 and November 12, 2015.[3] These notices were sent to "Glenn" and May Wynn at their Tulsa, Oklahoma address. Both notices listed an amount due if paid by a certain date. Neither resulted in payment by then owner, May Wynn. A posted notice was posted to the property on March 2, 2016, listing the legal description, contact information for the treasurer's office and notice the property would be sold at the tax resale auction on June 13, 2016 unless the "unpaid taxes and/or special assessments" were paid. A certified mail, final notice was sent to May Wynn on March 8, 2016, with a certified mail return receipt signed by May Wynn dated March 17, 2016. 68 O.S. Supp.2010 §3127.[4] In addition, a final notice was sent via certified mail to Appellant/Melissa Wynn's attorney, William D. Thomas, who was listed as the attorney of record with respect to Glynn Wynn's estate. The March 8, 2016 certified mail was signed for by Michael Thomas and the return receipt was dated March 18, 2016. Also on March 8, 2016, a notice was mailed to Melissa Wynn at an address on 21st Street in Tulsa Oklahoma; this notice was returned to the County Treasurer's office, stating "unable to forward." The auction of the subject property was also published in the Tulsa Beacon on May 19 and 26, 2016 and June 2 and 9, 2016. May Wynn testified she was aware of the tax sale.

¶4 Oakley Properties, L.L.C. was the successful bidder for the property at the June 13, 2016 auction and Oakley obtained the County Treasurer's Resale Deed the next day, June 14, 2016. The deed was recorded on June 14, 2016 as well.

¶5 The Pattersons are part of these proceedings due to their purchase agreement for $125,000 with Doug Thomas, attorney of Melissa Wynn, personal representative of the estate of Glynn Wynn, for purchase of the subject property. The Pattersons learned the property was purchased at auction by Oakley and they arranged to purchase the property directly from Oakley, bypassing the estate and Melissa Wynn's attorney. The Pattersons intervened in this cause of action to assert their claims against the estate, from which they had initially tried to purchase the property; they sought a judgment to confirm the validity of the tax sale and their purchase from Oakley; they sought to rescind the purchase contract with the Wynn estate and to quiet title.

¶6 In their motion for summary judgment, Appellants assert due process was not satisfied in this case, specifically with respect to Melissa Wynn. Appellants argue Melissa Wynn "held a legitimate claim of entitlement to the property" and "constitutional due process entitlement is not limited to the legal owner of the real property," citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 571-72, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (regarding claims to due process made by a non-tenured professor when his contract was not renewed, the employment contract at issue did not involve delinquent taxes or issues of notice such as those presented in this case). Melissa Wynn claimed entitlement to due process as a "prospective heir" of May Wynn's estate, citing Kaylor v. Kaylor, 1935 OK 530, 45 P.2d 743, 744 (regarding unrecorded mortgage as binding between assignor and assignee, Kaylor did not address notice required by state actor for delinquent tax sale with respect to prospective heirs) and Davis v. Morgan, 1939 OK 468, 95 P.2d 856, 857 (involved an heir in possession of real estate in which he owned an undivided interest, the decision explicitly expresses no opinion regarding an heir not in possession and does not speak to the position of a "prospective" heir who does not currently own an interest in the property at issue).

¶7 Melissa Wynn argues she was entitled to notice as an owner of the real estate and the notice sent to her was returned as undeliverable.[5] However, Melissa Wynn's argument ignores the numerous notices sent to the record owner, May Wynn, the notice sent to Melissa Wynn's attorney of record and signed for at the attorney's office, and notices posted on the property itself, in addition to the publication notices.

¶8 Appellants' argument does not demonstrate what statutory provision entitles Melissa Wynn to notice of the tax sale. Melissa Wynn was not the record owner of the delinquent property and any interest she had was, by Wynn's own admission, that of a "prospective heir," which is not a status provided for in the notice provisions at 68 O.S. Supp.2010 §3127. Appellants have provided no explanation of other legal authority upon which a "prospective heir" might rely to assert a right to notice from the county treasurer for tax sale purposes. In addition, this property did not become part of Glynn Wynn's estate due to the provisions in the deed and instead became May Wynn's property upon her husband's death. As a result, Melissa Wynn's role as the representative of her father's estate did not entitle her to notice of the tax sale under the terms of the statute. 68 O.S. Supp.2010 §3127.

¶9 Upon the record provided, the notices to the record owners, "Glenn" and May Wynn, the posted notices and the certified mailings to the record owners and the publication notices comply with the notice requirements outlined in the statute. We do not find Melissa Wynn was deprived of required due process notice as she has alleged.

¶10 Appellants next assert their right to redeem the property was constitutionally infirm and the tax deed is void as a result. Appellants assert the County Treasurer's practice which resulted in the tax sale to Oakley on June 13, 2016, followed by issuance of the tax deed on June 14th, and filing of the tax deed later that same day, effectively nullified the redemption statute, 68 O.S. Supp.2009 §3113.[6] Appellants argue the abbreviated time-line after the sale meant there was no window of opportunity in which to be heard and no opportunity to redeem their property, effectively depriving them of due process with respect to the right of redemption. Appellants argue both 68 O.S. §3113 and §3131 require the County Treasurer to allow a reasonable time for the delinquent taxpayer to redeem the property.[7]

¶11 Neither 68 O.S. §3113 nor §3131 use the word "reasonable," nor does either statute provide a time frame within which the delinquent taxpayer's sold property is to be held in limbo prior to the issuance and filing of the tax deed. While we agree the sale and deed filing in this case was conducted in a seemingly abbreviated time frame, Appellants have provided no Oklahoma legal authority to demonstrate the quick turnaround from sale to filing the deed is prohibited. We find no relief is warranted on this proposition of error.

¶12 Appellants also argue they were entitled to notice of the sale in order to be able to effectively exercise their right to redeem the property. Based on the nature of this argument, it appears Appellants' argument here is that they were entitled to notice the property actually sold at auction, in addition to asserting a right to notice of the auction itself. Under a previous format, a county treasurer would "bid off" real estate in the name of the county and record the county's bid and purchase, and then essentially hold the real estate with the county until the time to conduct a resale auction came after a two year redemption period. Michie v. Haas, 1928 OK 53, 272 P. 883. If that property so purchased by the county remained unredeemed for a period of two years, the county treasurer was then permitted to "proceed to advertise and sell such real estate at public auction[.]" Id. This pre-purchase of real estate by the county treasurer is no longer the format used to address delinquent taxes and the two year redemption period which existed under the previous format is no longer at issue. Instead, the county treasurer places the delinquent real estate at auction after a period of three or more years has passed, under the terms of 68 O.S. Supp.2008 §3105, and does not purchase the property on behalf of the county prior to the auction itself. As a result, the redemption period may be quite abbreviated on the post-auction side of the process, as it was in this case, but provides a greater opportunity to redeem the delinquent property prior to the auction itself. See 68 O.S. Supp.2009 §3113.

¶13 We agree with Appellants the delinquent owner has a right to the notice of the sale and the remittance of excess funds as per the terms of 68 O.S. Supp.2009 §3131(C), but Appellants have not cited any current Oklahoma authority entitling them to notice of the sold status of their property for purposes of providing a time limit within which to redeem the property after the auction. As a result, we do not find any relief is available upon this proposition of error.

¶14 Finally, Appellants argue Cleveland Bd. of Education v. Loudermill, 105 S.Ct. 1487, 470 U.S. 532, 84 L.Ed.2d 494 and Daffin v. State ex rel. Oklahoma Dep't of Mines, 2011 OK 22, ¶20, 251 P.3d 741, 748, stand for the proposition that a legislature has the power to create property rights, such as the right of redemption, but it cannot impose conditions to that property right, such as dictating redemption must occur before the execution of a deed of conveyance.[8]

¶15 Appellants' argument focuses entirely on the time within which to redeem the delinquent property after the resale auction has occurred, stating if the resale deed can be filed only a day after the auction, then Appellants are effectively deprived of the right to redeem. Appellants' Loudermill argument is similar to Appellants' second argument put forward in their motion for summary judgment, in which they argued their right to redeem was effectively nullified due to the ability of the tax resale purchaser to file the deed a day after the tax sale. We reach a similar result with respect to this proposition, as the record demonstrates the County Treasurer did not violate the statute in allowing the deed to be filed on June 14, 2016, nor do we find the statute to be constitutionally infirm in light of the years prior to the sale that were available to Appellants had they desired to redeem the property when they began to receive notices.

¶16 It should also be noted the right to redeem may be exercised at any time before the execution of a deed of conveyance and the right is extinguished if not exercised prior to the execution of the deed. 68 O.S. Supp.2009 §3113; Sherrill v. Deisenroth, 1975 OK 136, 541 P.2d 862. In addition, the statute dictates that redemption requires "paying to the county treasurer the sum which was originally delinquent including interest at the lawful rate as provided in Section 2913 of this title and such additional costs as may have accrued[.]" 68 O.S. §3113 (emphasis added). The record reveals at no time during Appellants' post-sale inquiry into the possibility of redeeming the property did they tender any of the delinquent sums, therefore not complying with the statute both in terms of the timing limitations imposed and the actions or payment required in order to redeem the property.

¶17 With respect to the Pattersons' quiet title, unjust enrichment and rescission claims, we affirm the trial court's grant of their partial motion for summary judgment. The trial court determined Oakley Properties L.L.C. acquired the tract through a valid tax resale auction, the deed was recorded on June 14, 2016 and the Pattersons acquired title on or about September 8, 2016 from Oakley Properties. Based on this court's determination with respect to the tax sale, the partial summary judgment was properly rendered in favor of the Pattersons and title is quieted in the Pattersons, due to their purchase from Oakley Properties as the trial court determined; and Appellants should realize no enrichment from the attempted sale of the tract.

¶18 The trial court's August 1, 2017 order granting the summary judgment motion of the Tulsa County Treasurer is AFFIRMED. The trial court's granting of the partial summary judgment motion of Charles and Tracie Patterson is AFFIRMED. The trial court's denial of Plaintiffs'/Appellants' motion for summary judgment is AFFIRMED.

BELL, P.J., and BUETTNER, J., concur.

FOOTNOTES

[1] The legal description of the property is:

E652.7 S207.6 GOV LT 8 & E652.7 SW SW LYING N OF RR R/W SEC 9 19 12 12.995ACS

[2] 68 O.S. §3105(A):

A. The county treasurer shall in all cases, except those provided for in subsection B of this section, where taxes are a lien upon real property and have been unpaid for a period of three (3) years or more as of the date such taxes first became due and payable, advertise and sell such real estate for such taxes and all other delinquent taxes, special assessments and costs at the tax resale provided for in Section 3125 of this title, which shall be held on the second Monday of June each year in each county. The county treasurer shall not be bound before so doing to proceed to collect by sale all personal taxes on personal property which are by law made a lien on realty, but shall include such personal tax with that due on the realty, and shall sell the realty for all of the taxes and special assessments.

68 O.S. §3125:

If any real estate shall remain unredeemed for the period provided for in Section 3105 of this title, the county treasurer shall proceed to sell such real estate at resale, which shall be held on the second Monday of June each year in each county.

[3] Prior to the July and November 2015 "early" notices of the resale auction, the following were also sent to Glynn and May Wynn:
2012 tax statement, November 8, 2012;
Delinquency statement, January 17, 2013;
Delinquency statement, February 14, 2013;
Letter notification of tax lien, August 16, 2013;
Delinquency statement with 2013 tax statement, November 7, 2013;
Delinquency statement, January 17, 2014;
Delinquency statement, February 19, 2014;
Delinquency statement with 2014 tax statement, November 7, 2014;
Delinquency statement, January 16, 2015;
Early notification of 2016 tax resale auction, July 9, 2015;
Delinquency statement, November 10, 2015;
Second notice of 2016 tax resale auction, November 12, 2015.

[4] 68 O.S. Supp.2010 §3127 Notice of resale:

The county treasurer, according to the law, shall give notice of the resale of such real estate by publication of said notice once a week for four (4) consecutive weeks preceding such sale, in some newspaper, having been continuously published one hundred four (104) consecutive weeks with admission to the United States mails as second-class mail matter, with paid circulation and published in the county where delivered to the mails, to be designated by the county treasurer; and if there be no paper published in the county, or publication is refused, the county treasurer shall give notice by written or printed notice posted on the door of the courthouse. Such notice shall contain a description of the real estate to be sold, the name of the record owner of said real estate as of the preceding December 31 or later as shown by the records in the office of the county assessor, which records shall be updated based on real property conveyed after October 1 each year, the time and place of sale, a statement of the date on which said real estate taxes first became due and payable as provided for in Section 2913 of this title, the year or years for which taxes have been assessed but remain unpaid and a statement that the same has not been redeemed, the total amount of all delinquent taxes, costs, penalties and interest accrued, due and unpaid on the same, and a statement that such real estate will be sold to the highest bidder for cash. It shall not be necessary to set forth the amount of taxes, penalties, interest and costs accrued each year separately, but it shall be sufficient to publish the total amount of all due and unpaid taxes, penalties, interest and costs. The county treasurer shall, at least thirty (30) days prior to such resale of real estate, give notice by certified mail, by mailing to the record owner of said real estate, as shown by the records in the county assessor's office, which records shall be updated based on real property conveyed after October 1 each year, and to all mortgagees of record of said real estate a notice stating the time and place of said resale and showing the legal description of the real property to be sold. If the county treasurer does not know and cannot, by the exercise of reasonable diligence, ascertain the address of any mortgagee of record, then the county treasurer shall cause an affidavit to be filed with the county clerk, on a form approved by the State Auditor and Inspector, stating such fact, which affidavit shall suffice, along with publication as provided for by this section, to give any mortgagee of record notice of such resale. Neither failure to send notice to any mortgagee of record of said real estate nor failure to receive notice as provided for by this section shall invalidate the resale, but the resale tax deed shall be ineffective to extinguish any mortgage on said real estate of a mortgagee to whom no notice was sent. Beginning on April 24, 2008, no encumbrancer of real property in this state shall be permitted to file any instrument purporting to encumber real property in any county of the state with any county clerk unless the instrument states on its face the mailing address of such encumbrancer.

[5] On March 8, 2016, notice was sent to Melissa Wynn at an address on 21st street in Tulsa, Oklahoma, but was returned to the Tulsa County Treasurer as undeliverable. This undelivered notice to Melissa Wynn is in addition to the notice sent to her attorney of record on the same date, March 8th, with a returned receipt received on March 18, 2016; and in addition to the tax sale notices referenced in footnote 4.

[6] 68 O.S. Supp.2009 §3113. Redemption of real estate:

The owner of any real estate, or any person having a legal or equitable interest therein, may redeem the same at any time before the execution of a deed of conveyance therefor by the county treasurer by paying to the county treasurer the sum which was originally delinquent including interest at the lawful rate as provided in Section 2913 of this title and such additional costs as may have accrued; provided, that minors or incapacitated or partially incapacitated persons may redeem from taxes any real property belonging to them within one (1) year after the expiration of such disability, with interest and penalty at not more than ten percent (10%) per annum. The term incapacitated as used in this section relates to mental incapacitation only, physical disability is not covered under this term or this section.

[7] 68 O.S. Supp.2014 §3131. Filing of resale return with county clerk -- Issuance of deed -- Payment of sale expenses -- Remaining funds, disposition:

A. Within thirty (30) days after resale of property, the county treasurer shall file in the office of the county clerk a return, and retain a copy thereof in the county treasurer's office, which shall show or include, as appropriate:

1. Each tract or parcel of real estate so sold;

2. The date upon which it was resold;

3. The name of the purchaser;

4. The price paid therefor;

5. A copy of the notice of such resale with an affidavit of its publication or posting; and

6. The complete minutes of sale, and that the same was adjourned from day to day until the sale was completed.

Such notice and return shall be presumptive evidence of the regularity, legality and validity of all the official acts leading up to and constituting such resale. Within such thirty (30) days, the county treasurer shall execute, acknowledge and deliver to the purchaser or the purchaser's assigns, or to the board of county commissioners where such property has been bid off in the name of the county, a deed conveying the real estate thus resold. The issuance of such deed shall effect the cancellation and setting aside of all delinquent taxes, assessments, penalties and costs previously assessed or existing against the real estate, and of all outstanding individual and county tax sale certificates, and shall vest in the grantee an absolute and perfect title in fee simple to the real estate, subject to all claims which the state may have had on the real estate for taxes or other liens or encumbrances. Twelve (12) months after the deed shall have been filed for record in the county clerk's office, no action shall be commenced to avoid or set aside the deed. Provided, that persons under legal disability shall have one (1) year after removal of such disability within which to redeem the real estate.

B. Any number of lots or tracts of land may be included in one deed, for which deed the county treasurer shall collect from the purchaser the fees provided for in Section 43 of Title 28 of the Oklahoma Statutes. The county treasurer shall also charge and collect from the purchaser at such sale an amount in addition to the bid placed on such real estate, sufficient to pay all expenses incurred by the county in preparing, listing and advertising the lot or tract purchased by such bidder, which sums shall be credited and paid into the resale property fund hereinafter provided, to be used to defray to that extent the costs of resale.

C. When any tract or lot of land sells for more than the taxes, penalties, interest and cost due thereon, the excess shall be held in a separate fund for the record owner of such land, as shown by the county records as of the date said county resale begins, to be withdrawn any time within one (1) year. No assignment of this right to excess proceeds shall be valid which occurs on or after the date on which said county resale began. At the end of one (1) year, if such money has not been withdrawn or collected from the county, it shall be credited to the county resale property fund.

[8] Cleveland Bd. of Education v. Loudermill, 470 U.S. 532, held the process due to a terminated employee was a pretermination right to respond, coupled with a posttermination administrative procedure that was provided by the Ohio statute. The employees at issue were not provided an opportunity for hearing prior to the deprivation of their property right in continued employment, which the court determined was an impermissible infringement on the employees' pretermination due process rights.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1939 OK 468, 95 P.2d 856, 186 Okla. 30, DAVIS v. MORGAN
Discussed
 1935 OK 530, 45 P.2d 743, 172 Okla. 535, KAYLOR v. KAYLOR
Discussed
 1928 OK 53, 272 P. 883, 134 Okla. 57, eMICHIE v. HAAS
Discussed
 2011 OK 22, 251 P.3d 741, DAFFIN v. STATE ex rel. OKLAHOMA DEPT. OF MINES
Discussed
 1975 OK 136, 541 P.2d 862, SHERRILL v. DEISENROTH
Discussed
Title 68. Revenue and Taxation
 Cite
Name
Level

 68 O.S. 3105, Real Property to be Sold for Delinquent Taxes and Special Assessments
Discussed
 68 O.S. 3125, Resale by County of Unredeemed Lands
Cited
 68 O.S. 3131, Resale Return
Discussed
 68 O.S. 3113, Redemption From Lien Resulting From Tax Sale
Discussed at Length
 68 O.S. 3127, Notice of Resale of Real Estate
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA